## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

GS HOLISTIC, LLC,

                Plaintiff,

v.

MICHIGAN TOBACCO SHOP LLC
d/b/a MICHIGAN TOBACCO SHOP
and WALID SHOHATEE,

                Defendants.

Case No. 2:25-cv-10505

**DEMAND FOR JURY TRIAL**

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, it's Complaint against the Defendants, MICHIGAN TOBACCO SHOP LLC d/b/a MICHIGAN TOBACCO SHOP and WALID SHOHATEE (collectively, "Defendants"), and alleges, as follows:

### Jurisdictional Allegations

1.    This is a civil action against the Defendants for trademark infringement, counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*), and design patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et. seq*.

2.     This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, false designation of origin and unfair competition, and patent infringement pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338(a).

## Venue

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this district, the cause of action occurred in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and the Defendants have extensive contacts with this judicial district relating to GS' claims. The Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

## Parties

4.     GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036. GS is the registered owner of the Stündenglass trademarks and US Patent Nos. D943,817 and D970,804.

5.     MICHIGAN TOBACCO SHOP LLC d/b/a MICHIGAN TOBACCO SHOP (hereinafter referred to as "MICHIGAN TOBACCO") is a limited liability company that was organized and existing under the laws of the State of Michigan

and has its principal place of business at 12375 Telegraph Rd, Taylor, Michigan 48180. WALID SHOHATEE owns and operates the MICHIGAN TOBACCO at that location. MICHIGAN TOBACCO is a citizen of Michigan.

6. WALID SHOHATEE is domiciled in and a resident of Dearborn, Michigan, and is *sui juris.* WALID SHOHATEE is a citizen of Michigan and regularly conducts and solicits business in the State of Michigan (including this Judicial District). WALID SHOHATEE is the owner of the Defendant, MICHIGAN TOBACCO SHOP LLC d/b/a MICHIGAN TOBACCO SHOP. WALID SHOHATEE controls and directs the activities, including the infringing activities, of Defendant MICHIGAN TOBACCO SHOP LLC d/b/a MICHIGAN TOBACCO SHOP.

<u>**Facts Common to All Counts**</u>

**The History of The Stündenglass Brand.**

7. Since 2020, GS has marketed and sold products using the well-known trademark "Stündenglass." The Stündenglass branded products, such as gravity infuser waterpipes and accessories related thereto, are widely recognized nationally and internationally. Indeed, the Stündenglass brand is one of the leading companies in the industry, known for high quality and innovation of products.

8. For approximately four years, GS has worked to distinguish the Stündenglass brand as the premier manufacturer of gravity infuser waterpipes by

emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior infusing experience. Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of genuine Stündenglass branded products. It is precisely because of the unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have a significant following and appreciation amongst consumers in the United States and internationally.

9.     As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark.

10.     GS is the rightful owner of United States trademarks, which are registered on the Principal Register. The following is a list of GS' relevant federally registered trademarks:

    a.     U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

    b.     U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

    c.     U.S. Trademark Registration Number 6,174,291 for the standard

4

character mark "Stündenglass" in association with goods further identified in registration in international class 034.

d.      U.S. Trademark Registration Number 7,028,399 for the standard character mark "Gravity Perfected" in association with goods further identified in registration in international class 010.

11.      The above U.S. registrations are valid, subsisting and in full force and effect. True and correct copies of the Trademark Registrations are attached hereto and marked as Exhibit "A." Hereinafter, GS utilizes the phrase "Stündenglass Marks" to refer to, collectively, GS' federally registered, above-listed trademarks.

**The Stündenglass Brand in the United States.**

12.      GS has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing and sale of gravity infuser waterpipes and accessories.

13.      The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade.  GS' Stündenglass branded products are made from superior materials.  The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well.

14.      The Stündenglass Trademarks are exclusive to GS and appear clearly on GS' Stündenglass Products, as well as on the packaging and advertisements related to the products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these

Trademarks. As a result, products bearing GS' Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

15.    GS' Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Because of these and other factors, the GS brand, the Stündenglass brand, and GS' Stündenglass Trademarks are famous throughout the United States.

16.    Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

17.    In fact, Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

18.    Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations for the Stündenglass products.

19.    GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Michigan.  GS has authorized approximately 3,000

stores in the United States to sell its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country.

20. It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand gravity infuser waterpipe is priced at retail at $599.95, while a counterfeit non-Stündenglass gravity infuser waterpipes with the fake Stündenglass mark is being sold for a range of $199 to $600.

21. It is exactly because of their higher sales value that Stündenglass branded products are targeted by counterfeiters. The counterfeiters tarnish the Stündenglass brand by unlawfully selling gravity infuser waterpipes that have identical, or nearly identical, versions of the Stündenglass Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by owners, such as the Defendants in the instant case.

22. In essence, the Defendants mislead consumers by selling in their stores low grade products that take a free ride on the goodwill of the Stündenglass brand, and in turn, the Defendants reap ill-begotten profits. The Defendants' offering for sale of counterfeit Stündenglass products contributes to the complete flooding of the marketplace with Stündenglass counterfeit products, which results in lost sales and damages to GS and irreparable harm to the Stündenglass brand's image.

7

23.     Moreover, GS offers a 10-year warranty on its products, and when the counterfeit products break or need repair, innocent purchasers learn that they do not have a warranty on the goods, tarnishing GS' public image.

24.     The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase genuine Stündenglass gravity infuser waterpipes when stores selling counterfeit products are selling products which appear to be identical and at half the price which genuine products can be sold.

25.     Unfortunately, the current U.S. marketplace is saturated with counterfeit Stündenglass products – just like those WALID SHOHATEE, through his store, MICHIGAN TOBACCO, is offering for sale.  As such, GS has been forced to scrupulously enforce its rights in order to protect the Stündenglass Marks against infringement.   By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the Stündenglass Marks and/or counterfeit Stündenglass branded products nationwide.  GS has had to bear great expense to seek out and investigate suspected counterfeiters in GS' attempt to clean up the marketplace.

**Defendants' Counterfeiting and Infringing Activities**

26.     The Defendants operate a retail smoke shop through which they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

27.     The Defendants have offered for sale counterfeit Stündenglass products with the Stündenglass trademark and without the consent of GS. In fact, they have offered counterfeit gravity infuser waterpipes bearing imitations of the Stündenglass Trademarks that were not made or authorized by GS.  These are hereinafter the "Counterfeit Goods."

28.     Nevertheless, the Defendants have offered for sale in commerce the Counterfeit Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the Stündenglass Marks (hereinafter the "Infringing Marks"), detailed above.

<u>Defendant's Counterfeit Goods</u>        <u>Plaintiff's Genuine Product</u>

    

29.     The Defendants have, without the consent of GS, offered for sale in their store, the Counterfeit Goods bearing the Infringing Marks, bearing the likeness

9

of the Stündenglass Trademarks in the United States.

30.    The marks affixed to the Counterfeit Goods that the Defendants have offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the Stündenglass Trademarks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

31.    Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to genuine products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

32.    In the ongoing investigation into the sales of counterfeit products bearing the fake Stündenglass Marks, MICHIGAN TOBACCO offered for sale Counterfeit Goods.

33.    Specifically, on September 17, 2024, GS' investigator attended MICHIGAN TOBACCO's location, which was open to the public, and observed that it had at least 13 counterfeit gravity infuser waterpipes which display each of the four aforementioned Stündenglass Marks.  The investigator purchased a gravity infuser waterpipe with each of the four aforementioned Stündenglass Marks affixed to it, from MICHIGAN TOBACCO, for a cost of $229.99 ($243.79 after tax), charged to the account of GS' investigator. Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed

the Infringing Marks.

34.     Attached hereto as Exhibit "B" are the photographic examples of the Defendants' use of the Infringing Marks, taken from the Counterfeit Good.  As seen in the pictures, the Counterfeit Good contained all three of GS' marks on it: U.S. Trademark Registration Number 6,633,884; U.S. Trademark Registration Number 6,174,292; U.S. Trademark Registration Number 6,174,291 and U.S. Trademark Registration Number 7,028,399.  The Defendants' use of the Counterfeit Marks is substantially indistinguishable, if not identical, to GS' Marks.

35.     WALID SHOHATEE authorized, directed, and/or participated in MICHIGAN TOBACCO's offer for sale, in commerce, of the Counterfeit Goods. WALID SHOHATEE's acts were a moving, active, and conscious force behind MICHIGAN TOBACCO's infringement of the Stündenglass Trademarks.

36.     The Defendants' use of the counterfeit Stündenglass Trademarks began after the registration of the Stündenglass Trademarks.  Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the Stündenglass Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

37.     The unauthorized offering for sale by MICHIGAN TOBACCO, under the authority, direction and/or participation of WALID SHOHATEE, of the Counterfeit Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. §

1114 and 15 U.S.C. § 1125(a).

38.     The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the Stündenglass Trademarks, which are owned by GS.

39.     MICHIGAN TOBACCO's use of the Stündenglass Marks includes displaying to offer for sale unauthorized copies of Counterfeit Stündenglass branded products.  MICHIGAN TOBACCO's offering to sell the Stündenglass counterfeit products, bearing the Infringing Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

40.     MICHIGAN TOBACCO used images and names identical to or confusingly similar to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks.   The Infringing Marks affixed to the Counterfeit Goods that MICHIGAN TOBACCO has offered for sale are confusingly identical or similar to the Stündenglass Marks that GS affixes to its gravity infuser waterpipes. The Counterfeit Goods and GS' goods are both gravity infusers, and marks identical or confusingly similar to the Stündenglass marks appear on the Infringing Goods.

41.     The Defendants' Infringing Goods travel in identical channels of trade

and are sold to identical consumers as Stündenglass genuine goods.

42.     The gravity infuser waterpipes that MICHIGAN TOBACCO sells and offers for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine Stündenglass brand products.

43.     MICHIGAN TOBACCO has offered for sale its water pipes under the Infringing Marks through its retail convenience store.

44.     MICHIGAN TOBACCO and WALID SHOHATEE's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by MICHIGAN TOBACCO, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by MICHIGAN TOBACCO originate from, and are associated or affiliated with, or otherwise authorized by GS.

45.     MICHIGAN TOBACCO and WALID SHOHATEE's acts are willful with the deliberate intent to trade on the goodwill of the Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's gravity infuser waterpipes to MICHIGAN TOBACCO.  The Defendants, as merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry.  It is readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the genuineity of

the goods sold by their shop and have acted with at least willful blindness as to GS' intellectual property rights in the Stündenglass Marks.  Here, the Defendant sold counterfeit product purporting to be a silver Kompact Stündenglass gravity infuser waterpipe for $229.99 whereas the genuine product retails for $599.95 each. Furthermore, GS Holistic has neither manufactured nor offered for sale silver Kompact Stündenglass gravity infuser waterpipes.  The products offered for sale by the Defendants also lacked the authentication sticker which the Plaintiff has stated on its website is present on all genuine Stündenglass products.  Lastly, the product sold by the Defendants lacked any serial number which would be expected on an genuine Stündenglass product.

46.     MICHIGAN TOBACCO and WALID SHOHATEE's acts have caused damage and immediate irreparable harm to GS, the Stündenglass Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

47.     As a proximate result of the unfair advantage accruing to WALID SHOHATEE and MICHIGAN TOBACCO's business from deceptively trading on GS' advertising, sales, and consumer recognition, WALID SHOHATEE and MICHIGAN TOBACCO have made profits and gains to which they are not in law or equity entitled.

48.     The injuries and damages sustained by GS has been directly and

proximately caused by MICHIGAN TOBACCO and WALID SHOHATEE's offers for sale of their goods bearing infringements or counterfeits of the Stündenglass Marks.

49.     Through such business activities, WALID SHOHATEE and MICHIGAN TOBACCO purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of Michigan, and in doing so, have knowingly harmed GS.

50.     Furthermore, the sale and distribution of Counterfeit Goods by MICHIGAN TOBACCO has infringed upon the above-identified federally registered trademarks.

51.     The spurious marks or designations used by MICHIGAN TOBACCO in interstate commerce are identical with, or substantially indistinguishable from, the Stündenglass Marks on goods covered by the Stündenglass Marks. Such use therefore creates a false affiliation between MICHIGAN TOBACCO, GS, and the Stündenglass Marks.

52.     Due to the actions of WALID SHOHATEE and MICHIGAN TOBACCO, GS has been forced to retain the undersigned counsel and pay the costs of bringing an action forward. WALID SHOHATEE and MICHIGAN TOBACCO should be responsible for paying GS' reasonable costs of the action.

53.     WALID SHOHATEE and MICHIGAN TOBACCO's acts have

damaged, and will continue to damage GS, and GS has no adequate remedy at law.

54.     Moreover, MICHIGAN TOBACCO and WALID SHOHATEE's wrongful acts will continue unless enjoined by the Court.  Accordingly, WALID SHOHATEE and MICHIGAN TOBACCO must be restrained and enjoined from any further counterfeiting or infringement of the Stündenglass Marks.

### **The Asserted Patents**

55.     On February 15, 2022, U.S.  Patent No.  D943,817 ("the 'D817 patent"), entitled "Hookah," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") and names Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey Huston, and Michael Trzecieski as inventors.  A copy of the 'D817 patent is attached hereto as Exhibit "B."

56.     The 'D817 patent discloses and claims the non-functional ornamental design for a Hookah, which is described and shown from multiple perspectives in Figures 1-8, reproduced below.



57.     On November 22, 2022, U.S.  Patent No.  D970,804 ("the 'D804 patent"), entitled "Hookah," was duly and legally issued by the USPTO and names Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey

Huston, and Michael Trzecieski as inventors.  A copy of the 'D804 patent is attached hereto as Exhibit "C."

58.    The 'D804 patent discloses and claims the non-functional ornamental design for a Hookah, which is described and shown from multiple perspectives in Figures 1-8, reproduced below.



59.    Moreover, GS' Stündenglass waterpipe Hookah and Stündenglass Kompact waterpipe Hookah are marked with the patent number of the 'D817 and 'D804 patents on the product's packaging.

60.    An example of the ornamental designs disclosed and claimed by the 'D817 and 'D804 patents are embodied by the Plaintiff's waterpipe Hookah which embodies the same non-functional ornamental features.   An example of the Plaintiff's waterpipe Hookah from GS' 2024 Catalog is depicted below.



**Defendant's Infringing Designs**

61.     The Defendant THE TOBACCO SHOPPES manufacturers, imports, sells, and/or offers for sale waterpipe Hookahs.

62.     THE TOBACCO SHOPPES business model is to steal the intellectual property and designs of others.

63.     The Defendant THE TOBACCO SHOPPES imported, sold, and/or offered for sale not only counterfeit waterpipes which bear the Stundenglass Trademarks, but also waterpipes (also known as "Hookahs") which are unauthorized copies of the designs of the Stundenglass waterpipes.  Hereinafter the Counterfeit Products together with those waterpipes which THE TOBACCO SHOPPES sold, offered for sale, distributed, or advertised which did not have the Stundenglass marks, but have implemented the unauthorized use of GS' patented designs are hereby referred to as "Infringing Products."  The Infringing Products incorporate the

ornamental designs for Hookahs claimed by the 'D817 and 'D804 patents without authorization or license from GS.

64.     In the ongoing investigation into the sales of products infringing upon the Plaintiff's 'D817 and 'D804 patents, THE TOBACCO SHOPPES offered for sale gravity infuser waterpipe Hookahs that infringed upon the 'D817 and 'D804 patents.

65.     On September 17, 2024, GS' investigator visited MICHIGAN TOBACCO's location, which was open to the public, and observed that it had an excess of gravity infuser waterpipe Hookahs which misappropriated the Plaintiff's patented Hookah designs.  The investigator purchased a gravity infuser waterpipe Hookahs which had the infringed upon both the 'D817 and 'D804 patents, from MICHIGAN TOBACCO for a price of $229.99 charged to the account of GS' investigator, and the Infringing Products infringed upon the 'D817 and 'D804 patents, directly and under the doctrine of equivalents, in that  an ordinary observer familiar with the prior art would be deceived into thinking that the design of the Infringing Products was the same as the 'D817 and 'D804 patents.

66.     The Defendant MICHIGAN TOBACCO, has misappropriated the Plaintiff's patented waterpipe Hookah designs in the Infringing Products.

**Count One**
**Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114**
(MICHIGAN TOBACCO and OWNERS)

67.    The Plaintiff avers Paragraphs 1 through 54, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

68.    GS owns the federally registered Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

69.    The Defendants, without authorization from GS, have used in commerce a spurious designation that is identical with, or substantially indistinguishable from, the Stündenglass Trademarks on the same goods covered by the Stündenglass Trademarks.

70.    The Defendants' unauthorized use of counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offer for sale in commerce is likely to cause confusion or mistake in the minds of the public.

71.    The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the Stündenglass Trademarks.

72.    The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73.    The Defendants' actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

74.     The Defendants' use in commerce of the counterfeit Stündenglass Trademarks has resulted in lost profits and business to GS, which are difficult to determine.  The Defendants have also, by selling counterfeit Stündenglass products, caused considerable damage to the goodwill of the Stündenglass Trademarks, and diminished the brand recognition of the Stündenglass Trademarks by introducing counterfeit products into the marketplace.

75.     By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### Count Two
### <u>Federal False Designation of Origin 15 U.S.C. § 1125(a)</u>
(MICHIGAN TOBACCO and OWNERS)

76.     The Plaintiff avers Paragraphs 1 through 54, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

77.     GS owns the federally registered Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

78.     The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the Stündenglass Trademarks on the same goods covered by

the Stündenglass Trademarks.

79.    The Defendants' unauthorized use of counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

80.    The Defendants' unauthorized use in commerce of the Stündenglass Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.    The Defendants' conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the Stündenglass Trademarks.

82.    The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the Stündenglass Trademarks.  Moreover, it will continue to cause damage to GS and confuse the public unless enjoined by this Court.

83.    GS has no adequate remedy at law.

84.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under

Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**Count Three**
**Direct Infringement of the 'D817 and 'D804 Patents**
(MICHIGAN TOBACCO)

85.     The Plaintiff avers Paragraphs 1 through 66, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

86.     The 'D817 and 'D804 patents claim non-functional ornamental designs, specifically, an "ornamental design for a Hookah."

87.     GS' gravity infuser waterpipe hookahs are marked with the patent number of the 'D817 and 'D804 patents on their product packaging.

88.     MICHIGAN TOBACCO had actual and constructive knowledge of GS' ownership of the claims of the 'D817 and 'D804 patents.

89.     MICHIGAN TOBACCO has sold infringing products that are Hookahs with ornamental designs that infringe the 'D817 and 'D804 patents.  MICHIGAN TOBACCO's Infringing Products have misappropriated the ornamental design for a Hookah as shown and described in the 'D817 and 'D804 patents.

90.     In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental designs for a Hookah claimed in the 'D817 and 'D804 patents and the Infringing Products are substantially the same,

with resemblance such as to deceive an ordinary observer, inducing him or her to purchase an Infringing Product supposing it to be the design claimed in the 'D817 and 'D804 patents.

91.     The Defendant's distribution of goods infringing upon the 'D817 and 'D804 patents has intentionally induced retailers to offer for sale products that infringe upon the 'D817 and 'D804 patents.

92.     The Defendant knew or had reason to know that the Infringing Products supplied to retailers would cause these retailers to infringe upon the 'D817 and 'D804 patents by selling and offering for sale the Infringing Products.

93.     The Defendant MICHIGAN TOBACCO, without authority has directly infringed and continues to directly infringe the 'D817 and 'D804 patents, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale, and/or using within the United States, the Infringing Products.

94.     As a result of the Defendant's infringement of the 'D817 and 'D804 patents, GS has suffered and will continue to suffer damages.  GS is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty, as permitted under 35 U.S.C. § 284, as well as all remedies for design patent infringement permitted under 35 U.S.C. § 289, namely the Defendants' total profits for all sales of hookahs that infringe upon the 'D817 and 'D804 patents.

95.    The Defendant, MICHIGAN TOBACCO's infringement of the 'D817 and 'D804 patents is willful, entitling GS to enhanced damages and attorneys' fees.

96.    On information and belief, the Defendant MICHIGAN TOBACCO copied the design of GS' Hookah, which embody the design claimed in the 'D817 and 'D804 patents, to arrive at the design of the Infringing Product.

97.    GS has been irreparably harmed by MICHIGAN TOBACCO's infringement of the 'D817 and 'D804 patents and will continue to be harmed unless MICHIGAN TOBACCO's infringing conduct is restrained and enjoined by order of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the following relief against the Defendants, as follows:

1.    With regard to Plaintiff's Count I for trademark infringement:

    a.  Statutory damages under 15 U.S.C. § 1117(c);

    b.  Costs of suit under 15 U.S.C. § 1117(a);

    c.  Award GS HOLISTIC LLC its reasonable attorneys' fees and costs;

    d.  Joint and several liability for WALID SHOHATEE and other officers, and directors, for the knowing participation in the counterfeiting activities of MICHIGAN TOBACCO.

e. Preliminarily and permanently enjoining MICHIGAN TOBACCO and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

   i. The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit Stündenglass product identified in the Complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

f. Pursuant to 15 U.S.C. §1116(a), directing MICHIGAN TOBACCO to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which MICHIGAN TOBACCO has complied with the injunction;

g.  For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

h.  For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in MICHIGAN TOBACCO's possession, which rightfully belong to the Plaintiff;

i.  For an order requiring the Defendants to produce to the Plaintiff, within thirty (30) days of entry of a Final Judgment, any and all documents including bank statements and comparable reporting documents from all other financial institutions of which the Defendants are customers including but not limited to banks, credit unions, trusts, trust companies, Savings & Loan Companies for the previous three months;

j.  Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Trademarks.

2.  With regard to Plaintiff's Count II for false designation and unfair competition:

a.  Disgorgement of profits under 15 U.S.C. § 1117(a);

b.  Treble damages under 15 U.S.C. § 1117(b);

c.  Costs of suit; and

d.  Joint and several liability for WALID SHOHATEE, and other officers, and directors, for the knowing participation in the counterfeiting activities of MICHIGAN TOBACCO.

3.  With regard to Plaintiff's Count III for patent infringement of the 'D804 and 'D817 patents:

a.  Adjudge that the Defendant has directly infringed, literally or under the

doctrine of equivalents, claim 1 of the 'D817 and 'D804 patents, and that the manufacture, use, sale, offer for sale, and/or importation of at least the Infringing Product infringes claim 1 of the 'D817 and 'D804 patents;

b. Preliminarily and permanently enjoining MICHIGAN TOBACCO, and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with them, from infringing the 'D817 and 'D804 patents;

c. For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

d. Award GS damages adequate to compensate for MICHIGAN TOBACCO's infringement of the 'D817 and 'D804 patents, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date the infringement

began;

e.  Award GS the total profit made by MICHIGAN TOBACCO from its
infringement of the 'D817 and 'D804 patents under 35 U.S.C. § 289;

f.  Award GS increased damages under 35 U.S.C. § 284 for willful and
deliberate infringement of the 'D817 and 'D804 patents;

g.  Award GS attorney fees and costs incurred in prosecuting this action,
together with pre-judgment and post-judgment interest; and

4.  For such further and other relief as this Court may deem just and
equitable.

## Demand for Jury Trial

The Plaintiff demands a Jury Trial on all issues so triable.

Date: February 20, 2025

Respectfully submitted,

*/s/ David L. Perry II*
David L. Perry II
Florida Bar No. 1045902
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
DPerry@LegalBrains.com
Serv608@LegalBrains.com
Telephone: 561-232-2222
Joel A. Bernier

P74226
**BOROJA, BERNIER &
ASSOCIATES PLLC**
49139 Schoenherr Rd.
Shelby Township, MI 48315
(586) 991-7611
*Attorneys for the Plaintiff*